IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

LEE HOLLINGSWORTH, *et al.*                                    PLAINTIFFS

V.                              CIVIL ACTION NO. 2:15-CV-113-KS-MTP

HERCULES, INC..                                                  DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons below, the Court **grants in part and denies in part** Defendant's Motion for Partial Summary Judgment [72].

<u>I. BACKGROUND</u>

This is a toxic tort case. Plaintiffs own property in Hattiesburg, Mississippi, near the site of a chemical plant that Defendant operated from 1923 until approximately 2009.[1] Plaintiffs allege that Defendant improperly disposed of numerous hazardous waste products, contaminating the soil and groundwater beneath its facility. Plaintiffs contend that these hazardous waste products migrated through several environmental pathways and contaminated the soil, air, and groundwater of their property. Plaintiffs allege that they have suffered property damage, loss of income, and emotional distress. They specifically asserted counts of negligence, gross negligence, nuisance, and trespass.

The parties filed numerous dispositive and evidentiary motions, and they are all

---

[1]This is one of several toxic tort suits against Defendant in this Court. *See, e.g.* Complaint, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. Oct. 2, 2012), ECF No. 1; Complaint, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 9, 2014), ECF No. 3.

ripe for review. The Court presently addresses Defendant's Motion for Partial Summary Judgment [72].

## II. DISCUSSION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### A.   *Groundwater*

First, Defendants argue that Plaintiffs can not prove claims of trespass or nuisance with respect to the groundwater on their property because they have no

evidence of contaminants in the groundwater on their property. As this Court has previously ruled,[2] a "trespass requires an actual physical invasion of the plaintiff's property." *Prescott v. Leaf River Forest Prods.*, 740 So. 2d 301, 310 (Miss. 1999).[3] It appears to be undisputed that Plaintiffs have no evidence of contaminants in the groundwater on their property. Therefore, the Court grants Defendant's motion for summary judgment as to any trespass claim with respect to the groundwater on Plaintiffs' property.

Plaintiffs contend that they are not required to present evidence of an actual physical invasion of their property. Rather, they contend that evidence of groundwater contamination on property immediately adjacent to their own is sufficient to create a genuine dispute of material fact as to their groundwater trespass claims. As stated above, Mississippi law requires evidence of an "actual physical invasion of the plaintiff's property." *Prescott*, 740 So. 2d at 310. Plaintiffs decry this standard as "hyper-technical," but, regardless of Plaintiffs' opinion, it remains the law.

**B.   *Decreased Property Value***

Defendant also argues that Plaintiffs have insufficient evidence to support a

---

[2]*See* Memorandum Opinion and Order at 2, 14, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. Jan. 13, 2016), ECF No. 73.

[3]*See also Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir. 1993) (Mississippi requires proof of invasion of property for common law trespass); *Anglado v. Leaf River Forest Prods.*, 716 So. 2d 543, 548 (Miss. 1998) (to establish claim of trespass, plaintiff must prove that property was exposed to contaminant); *Leaf River Forest Prods. v. Simmons*, 697 So. 2d 1083, 1085 (Miss. 1996) (trespass requires an actual physical invasion of the plaintiff's property).

claim of decreased property value caused by the alleged contamination. First, Defendant argues that Plaintiffs' expert only provided appraisals of 106 McLaurin Street and 452 Columbia Street without any contamination. Defendant contends that Plaintiffs can not maintain a claim of decreased property value without also presenting an expert opinion of the properties' value after contamination.

In response, Plaintiffs represent that they intend to provide their own expert testimony as to the contaminated, "as is" value of their properties. Indeed, "the opinion testimony of a landowner as to the value of his land is admissible without further qualification." *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 434 (5th Cir. 1982). "The fields of knowledge which may be drawn upon" for expert testimony "extend to all 'specialized' knowledge," including "landowners testifying to land values." FED. R. EVID. 702 advisory committee's note.

In reply, Defendant contends that Plaintiffs failed to adequately disclose their opinions regarding the value of the properties. However, Local Rule 26 provides: "Challenges as to inadequate disclosure of expert witness(es) must be made no later than thirty days before the discovery deadline or will be deemed waived." L.U.Civ.R. 26(a)(3). The discovery deadline was September 15, 2016, Defendant first raised this issue on October 27, 2016, when it filed its reply brief. Accordingly, Defendant waived any argument regarding the inadequate disclosure of Plaintiffs' testimony regarding the value of their own properties.

Defendant also argues that Plaintiff can not prove a diminution in value of 138 West 8th Street. Plaintiff's appraiser concluded that the property was worth $35,000

without any contamination, and $0.00 as is. *See* Exhibit 11 to Motion for Partial Summary Judgment at 3, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Sept. 29, 2016), ECF No. 72-11. He concluded that the property currently had no value because the "minimal remediation costs . . . exceed the unimpaired value of the property." *Id.* at 39. Defendant contends that the appraiser's opinion as to the property's current value is based upon the estimated cost of "monitoring" the property for a trespass at some point in the future, and it argues that Mississippi does not permit recovery of damages for monitoring based on the risk of future injury. *See Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 5 (Miss. 2007).

Assuming that the appraiser's opinion of the current value of the house is inadmissible, Plaintiffs can still meet their burden of proof. Plaintiffs presented an affidavit from Plaintiff Lee Hollingsworth, one of the owners of 138 W. 8th Street, in which he provided his own opinion that the property would "likely sell for at least 25-30% less than" it would if it were not contaminated. Exhibit 5 to Response at 3, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Oct. 20, 2016), ECF No. 86-5. As explained above, Hollingsworth's opinion as to the property's value "is admissible without further qualification." *LaCombe*, 679 F.2d at 434. When combined with the appraiser's estimate of the property's unimpaired value – which Defendant does not challenge in the current motion – Plaintiff can demonstrate a diminution in the property's value.

## C.  *Emotional Distress*

Next, Defendant argues that Plaintiffs can not recover emotional damages. The

parties appear to agree that there are two routes to recovery of emotional damages – as damages recoverable on Plaintiffs' ordinary negligence claims or via a claim of intentional infliction of emotional distress ("IIED").[4] According to their disclosures, Plaintiffs suffered emotional distress because 1) the contamination of their property caused a decrease in their rental revenue, and 2) they fear for their own health.

1.    *Emotional Damages Caused by Health Concerns*

First, Plaintiffs now deny that they seek emotional damages based on their fear of future health problems, despite explicitly stating as much in their initial disclosures. *See* Exhibit 9 to Motion for Partial Summary Judgment at 11, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Sept. 29, 2016), ECF No. 72-9. Regardless, the Mississippi Supreme Court "has never allowed or affirmed a claim of emotional distress based solely on a fear of contracting a disease or illness in the future, however reasonable." *Paz*, 949 So. 2d at 5. Therefore, to the extent Plaintiffs asserted a claim for emotional damages based on their fear of future health problems,

---

[4]Plaintiffs did not specifically plead an IIED claim. However, in briefing, the parties applied the applicable standard, addressing whether Defendant's conduct was "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001). Plaintiffs' Complaint [1] arguably contains sufficient factual allegations to support an IIED claim, despite their failure to include it as an enumerated count. Therefore, absent any argument to the contrary, the Court will rely on the parties' briefing and assume that there is an IIED claim in this case.

Additionally, the parties did not address – and, therefore, the Court will not address – the requirements for recovering emotional damages on claims of trespass and/or nuisance apart from negligence claims premised on the same underlying conduct.

the Court grants Defendant's motion for summary judgment as to it.

  2. *Emotional Damages for Ordinary Negligence*

  Emotional distress "is a nebulous concept and requires substantial proof for recovery." *Wilson v. Gen Motors Acceptance Corp.*, 883 So. 2d 56, 64 (Miss. 2004). To recover emotional damages on an ordinary negligence claim, "the plaintiff must prove some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant." *Blackard v. Hercules, Inc.*, 17 F. Supp. 3d 576, 582 (S.D. Miss. 2014). Phrased differently, the plaintiff must, at the very least, "prove that he has incurred a mental or emotional injury," that is "medically cognizable and treatable." *Paz*, 949 So. 2d at 4.

  Defendant argues that Plaintiffs can not recover emotional damages for their negligence claims because there is no evidence that they have suffered a demonstrable mental or physical injury. Indeed, Plaintiffs testified that they have neither suffered a physical injury nor sought medical treatment or counseling for their alleged mental anguish. *See* Exhibit 3 to Motion for Summary Judgment at 5, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Sept. 29, 2016), ECF No. 72-3; Exhibit 2 to Motion for Summary Judgment at 5, *Hollingsworth v. Hercules*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Sept. 29, 2016), ECF No. 72-2.

  In their briefing, Plaintiffs made no attempt to demonstrate that they have suffered any reasonably foreseeable physical or mental harm as a result of Defendant's alleged negligence. In fact, they wholly failed to address Defendant's argument related to their claim for emotional damages on a negligence theory. Accordingly, the Court

grants Defendant's motion for summary judgment as to any claim for emotional damages in connection with Plaintiffs' negligence claims.

### 3.    *Intentional Infliction of Emotional Distress*

A plaintiff may recover on a claim for intentional infliction of emotional distress "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . even though there has been no physical injury." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* The standard has also been described as "malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Leaf River v. Ferguson*, 662 So. 2d 648, 659 (Miss. 1995). Liability will not attach for mere annoyances or other trivialities. *Funderburk v. Johnson*, 935 So. 2d 1084, 1100 (Miss. Ct. App. 2006). "[I]t is the nature of the act itself – as opposed to the seriousness of the consequences – which gives impetus to legal redress . . . ." *Bowden*, 120 So. 3d at 980.

Hercules argues that Plaintiffs have no evidence of conduct outrageous enough to constitute intentional infliction of emotional distress.[5] The Court disagrees. After reviewing the documents Plaintiffs presented in support of their response to Defendant's motion for summary judgment, the Court concludes that Plaintiffs have

---

[5]Hercules raised other arguments for the first time in reply. The Court will not consider them. *See United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 492 (5th Cir. 2014) (court generally does not consider arguments first raised in reply).

presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant's actions were outrageous enough to constitute intentional infliction of emotional distress. In summary, the documents presented by Plaintiff tend to show 1) that Defendant knew for decades that hazardous waste was escaping its impounding basin and sludge pits, 2) that Defendant knew for decades that it was in violation of environmental regulations, 3) that Defendant considered proposals for measures to prevent further contamination, and 4) that Defendant failed to implement any of said proposals. Ultimately, enforcement actions by MDEQ and the EPA – and the plant's closure – forced Defendant to take action, decades after it first knew of the problems.

Of course, Defendant disputes Plaintiffs' characterization of its conduct, but it failed to specifically address any of Plaintiffs' evidence. Defendant generally argues that its alleged conduct is irrelevant unless Plaintiffs demonstrate a causal link to their emotional damages. In other words, Defendant argues that Plaintiffs' emotional distress was caused by the loss of value in their properties, rather than Defendant's conduct. This is a matter of semantics insofar as Plaintiffs contend that their properties' loss of value was caused by Defendant's conduct. For these reasons, the Court denies Defendant's motion for summary judgment with respect to any claim for intentional infliction of emotional distress that Plaintiff may have asserted.

### D.    *Negligence* **Per Se**

Next, Defendant argues that the Court should grant summary judgment as to Plaintiffs' claim of negligence *per se*, which is based on Defendant's alleged violations of the Resource Conservation Recovery Act ("RCRA"). Among other things, Defendant

argues that Plaintiffs' negligence *per se* claim can not be based on RCRA violations because RCRA does not create a private right of action for damages.

RCRA creates a private right of action, 42 U.S.C. § 6972(a)(1), but it limits the available remedies to "civil penalties, injunctive relief, and attorney's fees." *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1574 (5th Cir. 1988). The Fifth Circuit has not addressed whether RCRA violations can provide the basis for a negligence *per se* claim under state law. But a majority of federal district courts have held that "allowance of a negligence *per se* action based on violation of RCRA would contravene the clear legislative intent of the statute not to allow for damages based on violation of its provisions." *Coastline Terminals of Conn., Inc. v. USX Corp.*, 156 F. Supp. 2d 203, 210-11 (D. Conn. 2001).[6] The Court elects to follow the majority rule. Plaintiffs "can not use the theory of negligence per se to bootstrap a private cause of action for damages when one is not provided for by the RCRA." *Short*, 46 F. Supp. 2d at 1201; *cf. Coleman v. Danek Med.*, 43 F. Supp. 2d 629, 633 n. 2 (S.D. Miss. 1998) (where statute provides no private right of action, violation of said statute will not support a claim of negligence per se) (citing cases).

---

[6]*See also Short v. Ultramar Diamond Shamrock*, 46 F. Supp. 2d 1199, 1201 (D. Kan. 1999); *325-343 E. 56th St. Corp. v. Mobil Oil Corp.*, 906 F. Supp. 669, 688 (D. D.C. 1995); *In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litigation*, No. 2:13-md-2433, 2015 U.S. Dist. LEXIS 88025, at *1122 (S.D. Ohio July 6, 2015); *Soo Line R.R. v. Werner Enters.*, No. 12-1089, 2013 U.S. Dist. LEXIS 82738, at *50-*52 (D. Minn. June 4, 2013); *In re TVA Ash Spill Litigation*, 2012 U.S. Dist. LEXIS 122231, at *206-07 (E.D. Tenn. Aug. 23, 2012); *contra Lozar v. Birds Eye Foods*, 678 F. Supp. 2d 589, 601-04 (W.D. Mich. 2009); *Nutrasweet Co. v. X-L Eng'g Corp.*, 926 F. Supp. 767 (N.D. Ill. 1996).

Plaintiffs note that RCRA's savings clause expressly provides that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of . . . hazardous waste, or to seek any other relief . . . ." 42 U.S.C. § 6972(f). However, other federal courts addressing the savings clause have held that plaintiffs may not use "the RCRA as a springboard to obtain damages via common law claims" despite the savings clause, and that such suits are "designed to achieve an end run around the strict limitations placed by Congress on private damages actions under RCRA." *Soo Line R.R.*, 2013 U.S. Dist. LEXIS 82738 at \*47-\*48. Accordingly, when such claims are premised solely on a RCRA violation, they are effectively RCRA claims for compensatory damages, which are not permitted. *See Abreu v. United States*, 468 F.3d 20, 31-32 (1st Cir. 2006); *Soo Line R.R.*, 2013 U.S. Dist. LEXIS 82738 at \*47-\*48.

## E.   *Strict Liability for Ultrahazardous Activity*

Finally, Defendant argues that the Court should decline to expand Mississippi's definition of "ultrahazardous activity" to encompass the activities alleged by Plaintiffs. "Mississippi law requires participation in an ultrahazardous activity before strict liability can be imposed for harm from industrial operations." *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 174 (5th Cir. 1997). "Ultrahazardous activity" is defined "fairly narrowly." *Id.* In fact, strict liability for ultrahazardous activity has only been found by Mississippi courts in cases involving the use and transport of explosives in populated areas. *Whitfield v. Tronox Worldwide LLC*, No. 1:03-CV-287-D-D, 2007 U.S.

11

Dist. LEXIS 39255, 2007 WL 1561807 (N.D. Miss. 2007) (citing *Donald v. Amoco Prods. Co.*, 735 So. 2d 161, 170 (Miss. 1999); *Teledyne Exploration Co. v. Dickerson*, 253 So. 2d 817, 818 (Miss. 1971); *Sprankle v. Bower Ammonia & Chem. Co.*, 824 F.2d 409, 415 (5th Cir. 1987)); *see also Lewis v. Kinder Morgan Southeast Terminals, LLC*, No. 2:07-CV-47-KS-MTP, 2008 U.S. Dist. LEXIS 61060, at *26 (S.D. Miss. 2008).

"As a federal court sitting in diversity jurisdiction," the Court declines "to extend [state] law beyond the boundaries currently established in the state's own courts" by expanding the definition of ultrahazardous activity. *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 343 (5th Cir. 1988); *see also Munn v. Algee*, 730 F. Supp. 21, 26 (N.D. Miss. 1990). Additionally, both the Fifth Circuit and Mississippi Supreme Court have declined to extend the definition of "ultrahazardous activity" to include trespass claims like those asserted here. *See, e.g. Bradley*, 130 F.3d at 174 (storage of petroleum naphtha in underground tanks at defendant's plant in plaintiff's neighborhood was not ultrahazardous activity); *Sprankle*, 824 F.2d at 415 (storage of anhydrous ammonia in storage tanks at chemical plant was not ultrahazardous activity); *Donald*, 735 So. 2d at 171-72. Accordingly, the Court grants Defendant's motion with respect to Plaintiffs' claim of strict liability for ultrahazardous activity.

### III. CONCLUSION

For these reasons, the Court **grants in part and denies in part** Defendant's Motion for Partial Summary Judgment [72]. Specifically:

- The Court grants the motion as to Plaintiffs' claims of trespass with respect to the groundwater on their properties;

- The Court denies the motion with respect to Plaintiffs' claims of decreased property values;

- The Court grants the motion as to any claim for emotional damages based on the fear of future health problems;

- The Court grants the motion as to any claim for emotional damages in connection with Plaintiffs' negligence claims;

- The Court denies the motion as to any claim for intentional infliction of emotional distress;

- The Court grants the motion as to Plaintiffs' negligence *per se* claim; and

- The Court grants the motion as to Plaintiffs' claim of strict liability for ultrahazardous activity.

SO ORDERED AND ADJUDGED this 22nd day of December, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

13