IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**LEE HOLLINGSWORTH,** *et al.*                                                                **PLAINTIFFS**

**V.**                                          **CIVIL ACTION NO. 2:15-CV-113-KS-MTP**

**HERCULES, INC..**                                                                                **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Plaintiffs' Motion for Partial Summary Judgment [69].

### I. BACKGROUND

This is a toxic tort case. Plaintiffs own property in Hattiesburg, Mississippi, near the site of a chemical plant that Defendant operated from 1923 until approximately 2009.[1] Plaintiffs allege that Defendant improperly disposed of numerous hazardous waste products, contaminating the soil and groundwater beneath its facility. Plaintiffs contend that these hazardous waste products migrated through several environmental pathways and contaminated the soil, air, and groundwater of their property. Plaintiffs allege that they have suffered property damage, loss of income, and emotional distress. They specifically asserted counts of negligence, gross negligence, nuisance, and trespass.

The parties filed numerous dispositive and evidentiary motions, and they are all

---

[1] This is one of several toxic tort suits against Defendant in this Court. *See, e.g.* Complaint, *Blackard v. Hercules, Inc.*, No. 2:12-CV-175-KS-MTP (S.D. Miss. Oct. 2, 2012), ECF No. 1; Complaint, *Abner v. Hercules, Inc.*, No. 2:14-CV-63-KS-MTP (S.D. Miss. May 9, 2014), ECF No. 3.

ripe for review. The Court presently addresses Plaintiffs' Motion for Partial Summary Judgment [69].

## II. DISCUSSION

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

Plaintiffs argue that summary judgment is appropriate as to their claims of trespass and nuisance with respect to the property located at 106 McLaurin Street. It appears to be undisputed that dioxathion was detected in attic dust samples collected

from the property, which is located a quarter of a mile from Defendant's facility. Plaintiffs contend that the presence of dioxathion in their attic is a "smoking gun" or "signature contaminant" that establishes their right to judgment as a matter of law.

A "private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property." *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 662 (Miss. 1995). A private nuisance does not require actual, physical invasion of property. *Id.* "One is subject to liability for a private nuisance if, but only if his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." *Id.* (quoting *Comet Delta, Inc. v. Pate Stevedore Co. of Pascagoula, Inc.*, 521 So. 2d 857 (Miss. 1988)).

"[A] civil trespass cause of action in Mississippi includes three elements: 1) an intrusion upon the land of another without license or other right for one's own purpose; 2) damage to the plaintiff as a result of physical invasion of the land; 3) credible evidence that the party charged is the party responsible for the tort." *McLaughlin v. Miss. Power Co.*, No. 1:01-CV-22-LG-JMR, 2010 U.S. Dist. LEXIS 105837, at *12 (S.D. Miss. Oct. 4, 2010) (citing *Monsanto Co. v. Scruggs*, 342 F. Supp. 2d 602, 606 (N.D. Miss. 2004)).

Therefore, under either theory of liability – nuisance or trespass – Plaintiffs must establish causation. In other words, they must prove that the dioxathion detected

in the attic at 106 McLaurin Street came from Defendant's facility. *Anglado v. Leaf River Forest Prods.*, 716 So. 2d 543, 549 (Miss. 1998) (plaintiff must link the contaminant on their properties with that produced by the defendant). Here, Plaintiff presented substantial evidence to support a jury's finding that dioxathion from Defendant's facility migrated onto their property. However, regardless of the strength of Plaintiff's evidence, Defendant presented sufficient evidence to create a genuine dispute of material fact as to whether the dioxathion in the Plaintiffs' attic actually came from Defendant's facility.

First, Defendant presented deposition testimony from Dr. Mark Hermanson, an expert hired by the City of Hattiesburg in a related case. Exhibit B to Response, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Oct. 19, 2016), ECF No. 85-2. Hermanson testified that tree bark samples he collected at various locations off-site contained no detectable amounts of dioxathion. *Id.* at 4-5. He concluded that trees on-site have been "affected by emissions from the sludge pits most likely during the lifetime of the tree," but that he could not draw any conclusions concerning "the impact of dioxathion from the site on off-site locations." *Id.* at 5.

Next, Defendant presented an air sampling report by Joseph Drapala, an industrial hygienist. Exhibit C to Response, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Oct. 19, 2016), ECF No. 85-3. He concluded that "the presence of . . . Dioxathion was determined to be absent in detectable amounts in the air samples that were collected in selected residential locations surrounding the former Hercules manufacturing site and on the former manufacturing site." *Id.* at 5. Likewise,

4

"[s]ample results for airborne samples collected on the former Hercules manufacturing site indicated that . . . Dioxathion [was] absent in detectable amounts indicating that [the compound was] not being released or transported into the atmosphere and areas surrounding the plant site." *Id.*

Dr. Danny Reible, one of Defendant's experts, provided a report in which he concluded that the "attic dust concentrations" relied upon by Plaintiffs' expert "do not trend downward with distance from the Site nor are they consistent with preferred wind directions." Exhibit D to Response at 3, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Oct. 19, 2016), ECF No. 85-4. He also noted that Plaintiff has presented no evidence of "background levels due to other potential local uses of these pesticides unrelated to the Hercules facility or normal, expected variations . . . due to local site or home conditions." *Id.* He said: "Without evaluating a background, it cannot be determined to a reasonable degree of scientific certainty whether occasional detectable concentrations of . . . dioxathion in attic dust are related to the Hercules Site or to other sources." *Id.* Finally, Reible concluded that Plaintiff has presented "no reliable scientific evidence that . . . dioxathion [has] historically or [is] currently being emitted from the Site." *Id.* at 4. He observed that Plaintiff's expert was "unable to establish a credible pathway transport from the facility," and, accordingly, "it is not possible to reliably link any of the current detections of . . . dioxathion to releases from the Site." *Id.*

Finally, Defendants presented evidence of another potential source of dioxathion in the Hattiesburg area. A pesticide spray containing dioxathion, Starbar Lintox-D,

was sold by the Forrest County Co-Op in Hattiesburg during the 1970's. *See* Exhibit H to Response, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Oct. 19, 2016), ECF No. 85-8. According to information from the EPA's website, the product could be used "as a premises spray for kennels and lawns . . . [t]o control fleas and ticks . . . ." Exhibit I to Response, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Oct. 19, 2016), ECF No. 85-9. Boyd Dingus, the former director of animal health for the Mississippi Federated Co-Op ("MFC"), provided an affidavit in which he testified that MFC distributed "animal health products that contained [dioxathion] to the Forrest County Co-Op in Hattiesburg, Mississippi. One of those products was Starbar Lintox-D." Exhibit J to Response, *Hollingsworth v. Hercules, Inc.*, No. 2:15-CV-113-KS-MTP (S.D. Miss. Oct. 19, 2016), ECF No. 85-10.

Plaintiffs have not contested the admissibility of the testimony and documents discussed above. Regardless of the strength of Plaintiffs' evidence that dioxathion from Defendant's plant migrated onto their property at 106 McLaurin Street, the evidence discussed above creates a genuine dispute of material fact as to the actual source of the contaminant.

### III. CONCLUSION

For these reasons, the Court **denies** Plaintiffs' Motion for Partial Summary Judgment [69].

SO ORDERED AND ADJUDGED this 23rd day of December, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE